**BANQUE COMPAFINA, Plaintiff,**

v.

**BANCO DE GUATEMALA, Desarrollo De Autopistas y Carreteras De Guatemala, S.A., Estoril Associated, Inc., and Devco Development Co., Inc., Defendants.**

**No. 84 Civ. 1061 (RWS).**

United States District Court,
S.D. New York.

March 23, 1984.

Bushkin, Gaims, Gaines & Stream, New York City, for plaintiff; Arnold C. Stream, Jeffrey T. Strauss, Lawrence B. Trachtenberg, New York City, of counsel.

Sage, Gray, Todd & Sims, New York City, for defendant Banco De Guatemala; Gilson B. Gray III, William B. Korman, John A. Forlines, III, Jerry J. Strochlic, Stuart A. Krause, New York City, of counsel.

OPINION

SWEET, District Judge.

Presently pending before the court are the motions of plaintiff Banque Compafina ("Compafina") to confirm its *ex parte* order of attachment ("Order") and of defendant Banco de Guatemala ("Banco de Guatemala") to vacate the Order pursuant to the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1601 through 1611, specifically §§ 1611(b)(1) and 1610(d)(1). For the reasons given below, the motion of Banco de Guatemala is granted, the Order

is vacated, and costs and damages may be assessed as set forth below.

Compafina, a Swiss banking corporation, has brought this action to recover on six promissory notes ("Notes") issued by defendant Desarrollo de Autopistas y Carreteras de Guatemala, S.A. Four of the notes are payable to defendant Estoril Associated, Ltd. and two are payable to defendant Devco Development Co., Inc. The payees endorsed the notes to Compafina. Banco de Guatemala has guaranteed the notes.

Banco de Guatemala is a bank created pursuant to the statutes of the Republic of Guatemala ("the Republic") and is owned by the Republic. It has the exclusive authority in the Republic, among other things, to issue currency, to have custody of and to administer the Republic's monetary reserves, to engage in open-market transactions in Guatemalan government securities so as to regulate the money supply, and to act as depository for the funds of the Republic and its agencies. Compafina does not dispute that Banco de Guatemala thus qualifies as a "foreign state" under § 28 U.S.C. § 1603(a) and (b), and as a "central bank" within the meaning of § 28 U.S.C. § 1611(b)(1).

Compafina commenced these proceedings on February 3, 1984 by obtaining the Order from New York Supreme Court. The Order directed that the Sheriff of the City of New York or of any New York county to levy upon any property in which Banco de Guatemala has an interest up to the amount of $1,140,300. Pursuant to the Order, it appears that the Sheriff of the City of New York levied on Banco de Guatemala property held by at least one of 18 banks listed in the affirmation in support of confirmation of the Order. On February 9, the New York Supreme Court entered an order directing Banco de Guatemala to show cause why an order pursuant to N.Y. Civ.Prac.L. § 6211(b) should not be entered confirming the Order. On February 14, 1984, Banco de Guatemala removed the action to this court.

Banco de Guatemala's motion to vacate was presented to the court on February 15, 1984 by way of order to show cause. A hearing was held at 4:30 p.m. on that day, at which Compafina submitted its motion to confirm and counsel argued and submitted further papers. After the hearing, in accordance with a stipulation between the parties entered into in open court at the hearing, the court vacated the attachment without prejudice to the merits of the motions, which were to be the subject of further submissions and a further hearing. On March 2, 1984, further argument was heard and further submissions were received. Among these submissions is an affidavit of Anthony M. Solomon ("Solomon"), president of the Federal Reserve Bank of New York ("Reserve Bank"), stating that if foreign central banks such as Banco de Guatemala become concerned that their United States assets are subject to attachment by private litigants, they might withdraw their dollar assets from this country, thereby destabilizing the dollar and the international monetary system.

The parties' agreement reached on the original return day, described above, sought an early resolution of the motions, not only because of the out-of-pocket expenses involved, but also because of the significance of the attachment to the Guatemalan central bank and of the question regarding the applicability of the FSIA.

### § 1611(b)(1)

█ Under the FSIA, a foreign state's property in the United States is generally immune from attachment. § 1609. Section 1610 provides some exceptions to this general rule, but § 1611(b)(1) overrides these exceptions:

> (b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if—
>
> > (1) the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of execution, or from execution, notwithstanding any withdrawal of the waiver

which the bank, authority or government may purport to effect except in accordance with the terms of the waiver . . . .

To come within § 1611(b)(1), Banco de Guatemala must show that the attached funds were "held for its own account," since Compafina does not dispute that Banco de Guatemala is a central bank within the meaning of § 1611(b)(1). According to the relevant legislative history, funds held for a central bank's "own account" are "funds used or held in connection with central banking activities, as distinguished from funds used solely to finance the commercial transactions of other entities or of foreign states." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 31, *reprinted in* 1976 U.S. Code Cong. & Ad.News 6604, 6630.

Banco de Guatemala has submitted the affidavit of Oscar Alvarez M. ("Alvarez"), vice-president of Banco de Guatemala. In his affidavit, Alvarez states:

> In connection with its central banking activities, Banco de Guatemala maintains certain assets in the United States, including gold reserves deposited with the Federal Reserve Bank of New York and funds on deposit with commercial banks in New York City.

Solomon, in his affidavit, states that Banco de Guatemala has provided the Reserve Bank with the required certification confirming that it owns the United States obligations that it has on deposit at the Reserve Bank, and that it does not hold or use the obligations in connection with the conduct of a commercial banking function or other commercial activity. He also stated that:

> The assets the Reserve Bank holds for the account of Banco de Guatemala are held solely for the account of Banco de Guatemala and are not held directly or indirectly for any other party . . . .

Compafina notes that, according to Alvarez, Banco de Guatemala is negotiating loans from several nations' export-import banks and from foreign commercial banks. Compafina contends that these loans demonstrate that the attached funds are not held for the bank's own account. However, the fact that Banco de Guatemala may receive these loans does not contradict Alvarez' statement that Banco de Guatemala's funds in the United States are held "[i]n connection with its central banking activities," *see* Patrikis, *Foreign Central Bank Property: Immunity from Attachment in the United States,* 1982 U.Ill.L. Rev. 265, 277–78, nor does it tend to show that the funds in the United States are used for commercial activities. At this preliminary stage, Banco de Guatemala has established by a preponderance of the evidence before the court that the attached funds are held for its own account.

There is a dispute between the parties as to the significance of this finding. Banco de Guatemala contends that funds coming within § 1611(b)(1) are immune from prejudgment attachment, and that this immunity may not be waived. Compafina contends that § 1611(b)(1) grants immunity from pre- or post-judgment attachment to funds held for a central bank's account, but that this immunity may be waived if the bank does so explicitly.

No decision that has addressed this question has been cited to this court. By its terms, § 1611(b)(1) reads as Banco de Guatemala suggests it does. The section grants immunity from attachment to funds held for a central bank's own account, "unless such bank . . . has explicitly waived its immunity from attachment *in aid of execution.*" The phrase "attachment in aid of execution" is used in the FSIA to mean only *post*judgment attachment. *Compare* § 1610(a)(1) (governing waiver of immunity from "attachment in aid of execution") *with* § 1610(d)(1) (governing waiver of immunity from "attachment prior to judgment"). Section 1611(b)(1) thus permits a foreign central bank to waive immunity from postjudgment attachment but not from prejudgment attachment. The commentators have agreed that the section should be so interpreted. *See* Patrikis, *supra,* at 280–83; Nichols, *The Impact of the Foreign Sovereign Immunities Act on the Enforcement of Lenders' Remedies,* 1982

U.Ill.L.Rev. 251, 260; Brower, Bistline & Loomis, *The Foreign Sovereign Immunities Act of 1976 in Practice*, 73 Am.J.Int'l L. 200, 209 (1979) (hereinafter "Brower").

On the other hand, there are legitimate questions about this interpretation of § 1611(b)(1). Although the section's policy of encouraging the deposit of central bank reserves in the United States is furthered by protecting those reserves from the harassment and intrusiveness of prejudgment attachment, it is unclear why Congress would have wanted to prevent a foreign central bank from explicitly waiving that protection. *See* Nichols, *supra*, at 260; Brower, *supra*, at 209. Indeed, one set of commentators has called § 1611(b)(1)'s failure to mention prejudgment attachment a "doubtless unintended anomaly." Brower, *supra*, at 209. It is also unclear why Congress, if this was the result it intended to accomplish, would not have done so directly, instead of using such circuitous language.

Fortunately, the court, in the context of these motions, need not decide this difficult question. If § 1611(b)(1) forbids central banks from waiving immunity from prejudgment attachment, which appears to be the proper interpretation based upon the statutory language, Compafina's attachment was improper. However, even if the section is construed to permit explicit waiver of this immunity, the attachment was still improper, since we hold below that Banco de Guatemala did not explicitly waive its immunity from prejudgment attachment within the meaning of § 1610(d)(1), and since the "explicitly waived" language in the two sections is identical. *See* H.R.Rep. No. 94–1487, *supra*, at 31.

### § 1610(d)(1)

The court has already held that § 1611(b)(1) is applicable. However, if § 1611(b)(1) were not applicable to this attachment because the attached funds are not held for the central bank's own account, § 1610(d)(1) would govern. As an alternative holding, therefore, the court will now consider whether the attachment was proper under § 1610(d)(1).

Section 1610(d)(1) exempts prejudgment attachment from § 1609's general grant of immunity if the foreign state against which the attachment is sought has "explicitly waived its immunity from attachment prior to judgment." Section 1610(d)(1) states:

> (d) The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if—
>
> > (1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver . . . .

The question regarding the effect of § 1610(d)(1), the parties agree, is whether the waivers in the Notes constitute an explicit waiver within the meaning of the statute.

Two recent decisions by our Court of Appeals have considered the degree of explicitness required of waivers under the statute. In *Libra Bank Ltd. v. Banco Nacional de Costa Rica*, 676 F.2d 47 (2d Cir.1982), the Court considered the following waiver contained in the defendant's promissory notes:

> The Borrower hereby irrevocably and unconditionally waives any right or immunity from legal proceedings including suit judgment and execution on grounds of sovereignty which it or its property may now or hereafter enjoy.

*Id.* at 49. The Court held that this passage constituted an explicit waiver under § 1610(d)(1), stating:

> The provision in the promissory notes quoted above evinces a clear and unambiguous intent to waive all claims of immunity in all legal proceedings. "Suit judgment" and "execution" are referred

to only by way of examples of legal proceedings. This enumeration clearly is not intended to be exhaustive. If anything, it suggests that prejudgment attachment is a form of "legal proceedings." The waiver is "explicit" in the sense that it is clear and unambiguous. Banco Nacional certainly intended to reserve no rights of immunity in any legal proceedings.

*Id.*

In *S & S Machinery Co. v. Masinexportimport,* 706 F.2d 411 (2d Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983), Judge Timbers, who wrote the *Libra* opinion, confronted the following waiver:

Nationals, firms, companies and economic organizations of either party [to the United States—Romania trade agreement] shall be afforded access to all courts, and when applicable, to administrative bodies as plaintiffs or defendants, or otherwise, in accordance with the laws in force in the territory of such party. They shall not claim or enjoy immunities from suit or execution of judgment or other liability in the territory of the other party with respect to commercial or financial transactions, except as may be provided in other bilateral agreements.

*Id.* at 416–17. Judge Timbers noted that:

Obviously waivers of immunity from suit or from execution of judgment have no bearing upon the question of immunity from prejudgment attachment. The only language in the above treaty that might be construed as a waiver of immunity from prejudgment attachment is the waiver of immunity from "other liability in the territory of the other Party."

*Id.* at 417. Turning to the crucial phrase, the Court stated:

We hold that the waiver of immunity from "other liability" does not explicitly waive immunity from prejudgment attachment. The phrase "other liability" is ill-suited to encompass prejudgment attachments. As we pointed out in *Libra Bank,* it is by no means clear that prejudgment attachments are liabilities.

The better view seems to be that such attachments, outside of their now discredited use in *quasi in rem* jurisdiction, are provisional remedies authorized to assure that prevailing parties will have meaningful recoveries.

*Id.* The Court distinguished *Libra,* where "the language of the agreement was virtually all-inclusive, waiving 'any right or immunity from legal proceedings,'" from "the scant and hazy 'other liability' language" in *S & S Machinery. Id.* at 418.

Three of the Notes contain the following language:

The Borrower, the Government of the Republic of Guatemala and Banco de Guatemala expressly waive any presentation, protest and notification of failure to pay or notice of refusal for payment of this promissory note; similarly, they hereby waive any right or immunity barring claims against same, and the Borrower and Banco de Guatemala waive competent jurisdiction corresponding to same and submit to the non-exclusive jurisdiction of any State or Federal Court of New York, sitting in New York, relative to any action or proceeding deriving from this promissory note or related to same, or to the jurisdiction of the courts of the Republic of Guatemala, at the sole discretion of the beneficiary. This promissory note shall be governed and interpreted pursuant to the laws of the State of New York.

The other three contain the following language:

"DESARROLLO DE AUTOPISTAS Y CARRETERAS DE GUATEMALA, SOCIEDAD ANONIMA," the Government of the Republic of Guatemala and Banco de Guatemala expressly waive any presentation, protest, notification of failure to pay or notice of refusal to pay this Promissory Note. They similarly waive any right or immunity barring claims against them; "DESARROLLO DE AUTOPISTAS Y CARRETERAS DE GUATEMALA, SOCIEDAD ANONIMA" and Banco de Guatemala waive competent jurisdiction corresponding to same and

submit to the jurisdiction of the courts of the State of New York, United States of America. Claims may be brought against the Government of the Republic of Guatemala only before the Courts of Justice of Guatemala.

Compafina points to the "relative to any action or proceeding" language in the first three Notes. It contends that this language is similar to the "any right or immunity from legal proceedings" in *Libra*. Banco de Guatemala contends that this language concerns only a waiver of jurisdiction, rather than a waiver of immunity from prejudgment attachment.

On the state of this record, the task is Talmudic and must be accomplished on the basis of the language alone. The language in the Notes relevant to a waiver of immunity is in the first clause of the relevant section of the quoted passages, in which Banco de Guatemala "[w]aive[s] any right or immunity barring claims against" it. This phrase is even less explicit than the phrase at issue in *S & S Machinery*. It thus cannot constitute a sufficient waiver under § 1610(d)(1) and even Compafina does not contend that it does. The second clause of the quoted passage from the first three Notes, containing the "relative to any action or proceeding" language, appears to relate only to jurisdiction—*i.e.*, personal jurisdiction, as opposed to the sovereign immunity waiver. Had the phrase "relative to any action or proceeding" appeared in the immunity clause, the Notes would have been almost identical to the *Libra* notes. However, the phrase at issue in the *Libra* notes by its terms related to immunity, not to jurisdiction. Therefore, the court holds that the Notes do not contain an explicit waiver of immunity from prejudgment attachment under § 1610(d)(1).

For these reasons, and on this record, the court holds that the attachment was improper under both § 1611(b)(1) and § 1610(d)(1). However, it is conceivable that subsequent discovery may add new facts bearing upon these conclusions. Further proceedings as to such facts and the damages suffered by Banco de Guatemala will await the trial. Discovery will be completed by August 6, 1984 and the pretrial order filed August 13, 1984, unless cause is presented to alter these dates.

**IT IS SO ORDERED.**