**BANK OF CREDIT AND COMMERCE INTERNATIONAL (OVERSEAS) LIMITED, Plaintiff,**

v.

**STATE BANK OF PAKISTAN, Defendant.**

**No. 97 Civ. 8736(SHS).**

United States District Court, S.D. New York.

April 15, 1999.

Michael Nussbaum, Ropes & Gray, Washington, DC, for Bank of Credit and Commerce Intern. (Overseas) Ltd.

H. Peter Haveles, Jr., H. Peter Haveles, Cadwalader, Wickersham & Taft, New York City, for State Bank of Pakistan.

Eugene R. Anderson, Anderson Kill & Olick, P.C., for Bank of Credit and Commerce Intern., S.A.

## OPINION

STEIN, District Judge.

The State Bank of Pakistan has moved to dismiss this action between a Cayman Islands bank and the central bank of Pakistan for breach of a loan agreement on the grounds of forum non conveniens. That motion is granted because Pakistan is an adequate alternate forum for this dispute and because the convenience of the parties and the ends of justice are best served by having the dispute heard in the courts of Pakistan.

## I. Background

Plaintiff Bank of Credit and Commerce International (Overseas) Limited ("BCCI Overseas") is incorporated under the laws of the Cayman Islands and does business internationally. It is one of a group of international banks ("BCCI group") whose parent is Bank of Credit and Commerce International Holdings, S.A. State Bank of Pakistan ("State Bank") is the central bank of Pakistan, an instrumentality of the government of Pakistan, and is headquartered in Karachi, Pakistan.

The basic facts of this action are uncontested. On May 30, 1991 BCCI Overseas transferred $50 million from its account at the American Express Bank in New York to State Bank's account at the Federal Reserve Bank in New York. There was no written agreement between BCCI Overseas and State Bank that documented the exact nature of this transaction. The terms of the transfer were negotiated via telephone, facsimile, and letter by State Bank representatives in Pakistan and BCCI Overseas officials located in Pakistan, Abu Dhabi, and Luxembourg.

BCCI Overseas claims that the transaction was a loan due on July 28, 1991 that State Bank has yet to repay. State Bank claims that transfer was a deposit rather than a loan, and that it was merely one in a series of back to back transactions that were executed between State Bank and the BCCI group starting in October 1990. State Bank asserts that it had reached an agreement with BCCI group officials pursuant to which BCCI Overseas' deposit of $50 million in State Bank's account at the Federal Reserve Bank would be offset by State Bank's deposit of the same amount with BCCI S.A. (another bank in the BCCI group). State Bank alleges that these transactions were effectuated to improve Pakistan's foreign exchange position by increasing its overseas dollar deposits.

On July 5, 1991 banking regulators in several countries took over the operations of the BCCI Group. When both BCCI Overseas and BCCI S.A. were taken over by banking regulators, State Bank claims that it merely exercised its right of set-off between these related entities and applied the $50 million debt owed to it by BCCI S.A. against the $50 million it owed to BCCI Overseas.

The liquidation of BCCI Overseas is being supervised by the Grand Court of the Cayman Islands. Cayman Island liquidators brought this action in the name of BCCI Overseas alleging that State bank breached what they claim to be a loan agreement with BCCI Overseas. The action, in which BCCI Overseas alleges one common law claim for breach of contract, was initially commenced in New York State Supreme Court in June of 1997,[1] and

---

1. BCCI Overseas simultaneously filed what it denominated a protective writ arising from the same transaction in the Grand Court of the Cayman Islands and on February 9, 1999 commenced an action against State Bank in that court.

was subsequently removed by State Bank to this Court, whereupon State Bank moved to dismiss this action pursuant to the equitable doctrine of forum non conveniens. State Bank claims that Pakistan is a more appropriate forum for the litigation of this dispute.

## II. Jurisdiction and Venue

■ State Bank constitutes a "foreign state" pursuant to the Foreign Sovereign Immunities Act ("FSIA") because it is an "agency or instrumentality of a foreign state." 28 U.S.C. §§ 1603(a) & (b). This Court has subject matter jurisdiction over this dispute between a foreign entity and a "foreign state" pursuant to 28 U.S.C. § 1330. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 490–91, 103 S.Ct. 1962, 1969–70, 76 L.Ed.2d 81 (1983). Removal of the action to this Court was appropriate pursuant to 28 U.S.C. § 1441(d) which allows for the removal of "any civil action brought in a State court against a foreign state" to the district "embracing the place where such action is pending."

■ Pursuant to the FSIA, this Court cannot exercise jurisdiction over State Bank unless the case falls within one of the exceptions to the statute's sovereign immunity provision. See 28 U.S.C. § 1604. A foreign state loses its immunity by implication if it is substantially involved in the litigation and files a responsive pleading without asserting a sovereign immunity defense. See 28 U.S.C. § 1605(a)(1); Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for Galadari, 12 F.3d 317, 325 (2d Cir.1993); Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir.1991). State Bank filed a notice of removal which asserted that this Court had jurisdiction over this dispute pursuant to the FSIA, an answer which listed ten affirmative defenses, and this motion to dismiss without once raising the defense of sovereign immunity; based upon this conduct, State Bank has, pursuant to 28 U.S.C. § 1605(a)(1), waived any sovereign immunity defense. Accordingly, the Court has jurisdiction over this action, and venue is proper in this district.

## III. Discussion

■ Whether an action should be dismissed based upon forum non conveniens is a discretionary determination. See Piper Aircraft Company v. Reyno, 454 U.S. 235, 247, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); Alfadda v. Fenn, 159 F.3d 41, 45 (2d Cir.1998). The calculus of that decision involves two steps: 1) determining whether there is an adequate alternate forum for the dispute, and 2) balancing the public and private interests factors outlined by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), to determine "whether the convenience of the parties and the ends of justice would best be served by dismissing the action." Murray v. British Broadcasting Corp., 81 F.3d 287, 292–93 (2d Cir.1996). See Alfadda, 159 F.3d at 45. Although the plaintiff's choice of forum is normally accorded substantial deference, a foreign plaintiff's choice of forum is given less deference than that of a domestic plaintiff. See Piper Aircraft, 454 U.S. at 256, 102 S.Ct. at 266; Murray, 81 F.3d at 290.

## A. Adequate Alternate Forum

■ An alternate forum will be considered adequate if: 1) the defendants are subject to service of process there and 2) the forum permits a satisfactory remedy. See Piper, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22; Alfadda, 159 F.3d at 45. The party seeking dismissal—here State Bank—has the burden of proving that an adequate alternate forum exists. See Borden, Inc. v. Meiji Milk Products Co., Ltd., 919 F.2d 822, 828 (2d Cir.1990). Because State Bank is subject to service of process in Pakistan, BCCI Overseas' argument that Pakistan is an inadequate alternate forum focuses on the fact that a satisfactory remedy is unavailable there due to: 1) Pakistan's statute of limitations, 2) the

congestion of Pakistani courts, and 3) plaintiff's asserted inability to remove any judgment from Pakistan.

### 1. Statute of Limitations

 A foreign forum is inadequate if its statute of limitations would bar the commencement of an action and thus preclude the plaintiff from obtaining a remedy. *See Crimson Semiconductor, Inc. v. Electronum,* 629 F.Supp. 903, 909 (S.D.N.Y.1986). *Cf. In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India,* 809 F.2d 195, 203–04 (2d Cir.1987) (making forum non conveniens dismissal conditional upon defendant's waiver of statute of limitations defense); *Mendes Junior Intl. Co. v. Banco Do Brasil, S.A.,* 15 F.Supp.2d 332, 341 (S.D.N.Y.1998) (same). Both BCCI Overseas and State Bank have submitted declarations by experts on Pakistani law who agree that the general statute of limitations found in Pakistan's Limitation Act is three years and had expired well before this action was instituted. *See* Habibullah Dec. at ¶¶ 6–7; Zahid Reply Dec. at ¶ 5. They are also in agreement that the statute of limitations in Pakistan is an unwaivable defense—much like subject matter jurisdiction is in the United States—and Pakistani courts will dismiss any action if it appears to be untimely on the face of its complaint. *See* Habibullah Dec. at ¶¶ 8–9; Zahid Reply Dec. at ¶ 5.

However, State Bank puts forth three arguments as to why this action is not barred in Pakistan. First, State Bank has agreed to waive any statute of limitations defense that may be available to it in Pakistan. *See* Plaintiff's Reply Memorandum of Law at 6. Second, State Bank asserts that because this case involves Pakistan's central bank and a significant amount of money, this action is of importance to the Pakistani government and therefore the Pakistani courts will waive their typical statute of limitations requirements and hear this action, rather than have it litigated in a foreign court.

Third, State Bank claims that the three year statute of limitations found in Pakistan's Limitations Act does not apply to this action because it will be governed by the Banking Companies Recovery of Loans, Advances, Credits and Finances Act of 1997 ("Banking Act"). *See* Zahid Reply Dec. at ¶¶ 5–8. That statute created a separate Banking Court and special procedural rules to provide an expedited judicial process for banks doing business in Pakistan to collect on defaulted debts. According to State Bank's expert, in light of BCCI Overseas' characterization of the underlying transfer of funds as a loan, the Banking Act will encompass this action because it covers any action brought by a "banking company" to recover on a defaulted loan. *See id.* at ¶ 13. State Bank's expert also asserts that, on its face, the Banking Act revived the applicable statute of limitations for this action because Section 22(2) of the Banking Act provides: "in relation to past transactions a fresh cause of action would be deemed to arise, for purpose of limitation only, on the date which this Act comes into force." *See id.* at ¶ 7. Because the Banking Act went into effect on June 2, 1997, State Bank's expert claims that the statute of limitations applicable to this action in Pakistan will not expire until June 2, 2000. *See id.* at ¶ 5.

BCCI Overseas' expert contends that the Banking Act will not apply to this action, and, even if it does, it will not revive the applicable statute of limitations. He asserts that because BCCI Overseas is no longer doing business in Pakistan it would not constitute a "banking company" within the "spirit" of the act. Habibullah Supplemental Dec. at ¶ 14(d). His main support for this interpretation is that the act defines a "banking company" as a bank that "transacts the business of banking ... in Pakistan." *Id.* at ¶ 14(a). He claims that the statute's use of the present tense makes it inapplicable to banks such as BCCI Overseas that no longer do business in Pakistan. He also contends that Pakistani courts have interpreted the Banking Act "as merely setting a new limitations

date for claims not barred as of June 2, 1997," and that the courts have "expressly rejected the contention that the Banking Act revived claims barred on the date the Banking Act was enacted." *See id.* at ¶ 8.

This Court is faced with two legal opinions concerning Pakistani law that directly conflict with each other and has no polestar by which to fix its course though the intricacies of Pakistani law. As Judge Henry Friendly wrote almost forty years ago in *Conte v. Flota Mercante Del Estado,* 277 F.2d 664 (2d Cir.1960):

> [T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

*Conte,* 277 F.2d at 667 (quoted in *Schertenleib v. Traum,* 589 F.2d 1156, 1163 (2d Cir.1978)).

Based upon the fact that State Bank has both consented to waive any statute of limitations defense and to have this case handled under the expedited procedures contained in the Banking Act, as well as the language of the Banking Act itself which indicates that the relevant statute of limitations has been revived, the Court justifiably believes that the statute of limitations issue will not preclude the courts of Pakistan from hearing this action. *See Schertenleib,* 589 F.2d at 1163.

Further inquiry into determining precisely whether the statute of limitations will bar consideration of this action in Pakistan is "needless" because dismissal based upon forum non conveniens can be made conditional upon the occurrence of certain events. *Schertenleib,* 589 F.2d at 1163. *See, e.g., Blanco v. Banco Indus. de Vene-*

*zuela, S.A.,* 997 F.2d 974, 984 (2d Cir.1993) (citing cases); *Union Carbide,* 809 F.2d at 203–04. Often, the condition imposed is dependent upon the foreign forum taking certain action. *See, e.g., Borden,* 919 F.2d at 829 (dismissal conditional on foreign forum acting on preliminary injunction motion within a certain time); *Sussman v. Bank of Israel,* 990 F.2d 71, 71–72 (2d Cir.1993) (per curiam) (dismissal conditional on foreign officials not detaining plaintiff if he traveled there). Therefore, dismissal of this case will be on condition that the courts of Pakistan do not refuse to hear the case on statute of limitations grounds.[2]

### 2. *Congestion of Pakistan's Courts*

BCCI Overseas claims that congestion in the Pakistani courts is so great that the delays in litigating this action would essentially deprive it of a meaningful remedy; specifically, its expert asserts that this action could take 20–25 years to come to a final resolution on appeal in the Pakistani courts. *See* Habibullah Dec. at ¶¶ 14–33. *See also Bhatnagar v. Surrendra Overseas, Ltd.,* 52 F.3d 1220, 1227–29 (3d Cir. 1995) (delays of 25 years or more for the resolution of cases in Indian courts made India an inadequate forum for a personal injury case).

State Bank's expert, however, estimates that final resolution on appeal would take between seven and nine years in the courts of Pakistan if it is not expedited and considerably less time if the litigants adopt certain voluntary procedures. *See* Zahid Reply Dec. at ¶¶ 29, 33, 35. Also, because of the import of this case to the Pakistani government, State Bank's expert believes that the case will be given special treatment in the Pakistani courts, (*See id.* at ¶ 38. *Cf. Union Carbide,* 809 F.2d at 202–03 (India considered adequate forum because case would not be treated as an ordinary case)) and can be completed in 90 days if the expedited procedures of the

---

**2.** State Bank represented at oral argument of this motion that Pakistan's courts would de- cide the statute of limitations issue within six months of the commencement of the action.

Banking Act are followed. *See* Zahid Reply Dec. at ¶¶ 21–24.

In light of the opinion of State Bank's expert and of the fact that delay alone is rarely considered sufficient to deprive a plaintiff of an adequate forum, the Court cannot conclude that the delay in Pakistani courts would be so great as to deprive BCCI Overseas of an adequate forum. *See Broadcasting Rights Int'l Corp. v. Societe du Tour de France*, 708 F.Supp. 83, 85 (S.D.N.Y.1989); *Brazilian Inv. Advisory Servs., Ltd. v. United Merchants & Mfg., Inc.*, 667 F.Supp. 136, 138 (S.D.N.Y. 1987).

### 3. Inability to Remove Judgment

BCCI Overseas' final argument that it does not have an adequate remedy in Pakistan is that, pursuant Pakistan's Foreign Exchange (Temporary Restrictions) Ordinance of 1998 it will not be able to remove any money judgment that it might receive in Pakistan from Pakistan without State Bank's permission. *See* Habibullah Dec. at ¶ 34. This concern has been eliminated, however, because the Deputy Governor of the State Bank has expressly granted BCCI Overseas permission to remove the proceeds of any final judgment that it might receive in a Pakistani court. *See* Chughtai Reply Dec. at ¶ 4.

### B. Balancing of Gilbert Factors

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), the U.S. Supreme Court outlined two sets of "public" and "private" interests that a court must balance to determine whether a dismissal pursuant to the doctrine of forum non conveniens is appropriate. The public interests include: 1) difficulties flowing from court congestion; 2) having local disputes decided locally; 3) avoiding problems of applying foreign law; 4) avoiding burdening jurors with cases that do not affect their community. *See Murray*, 81 F.3d at 293 (citing *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6). The private interests include: 1)

ease of access to sources of proof; 2) availability of compulsory process; 3) the cost for witnesses to attend trial; 4) the enforceability of a judgment; and 5) all other factors that might make a trial shorter or less expensive. *See id.* at 294 (citing *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843). In this action, which involves two foreign corporations and a transaction that was negotiated outside of the United States, the *Gilbert* factors weigh strongly in favor of dismissal.

### 1. Public Interest Factors

 Pakistan has a greater local interest in this litigation than New York. The defendant in this action is Pakistan's central bank, and if the bank is found liable it could face a judgment of $50 million plus interest. Moreover, the events that led to this transaction involve important policy decisions of bank officials concerning the regulation of Pakistan's foreign exchange position. Clearly, Pakistan's government and its people have a substantial interest in the outcome of this litigation.

The only connection between this transaction and the United States is it involved dollars and was recorded by American banks. BCCI Overseas cites cases which, in determining choice of law issues, set forth New York's position as the "financial capital of the world" and its interest in having foreign banks conduct transactions here. *See Wells Fargo Asia Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir.1991) (citing *J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.*, 37 N.Y.2d 220, 227, 371 N.Y.S.2d 892, 898, 333 N.E.2d 168, 172 (1975)).

However, New York's interest in this litigation is decreased by the fact that neither of the litigants are American entities. Moreover, while New York does have an interest in maintaining financial preeminence, the relative importance of this single transaction is not significant in light of the vast number of international banking transactions that occur in New

York on a daily basis. Even if the outcome of this action would have an impact upon New York's interest in maintaining its international financial status, that impact could in no way be as great as the impact that the outcome of this action will have in relation to Pakistan. Finally, the fact that every aspect of this transaction apart from the transfer of funds occurred outside New York significantly decreases New York's interest in the litigation. *See Mobil Sales and Supply Corp. v. Republic of Lithuania,* 1998 WL 196194 at * 9 (S.D.N.Y. Apr.23, 1998).

At this stage of the litigation, it appears likely that foreign law would apply to this dispute. The Court must apply New York's choice of law rules to this breach of contract action over which it exercises jurisdiction pursuant to the FSIA. *See Barkanic v. General Admin. of Civil Aviation of the People's Republic of China,* 923 F.2d 957, 960 (2d Cir.1991). In a contract case, New York courts adhere to the flexible "center of gravity" or "grouping of contacts" choice of law rule and will apply the law of the jurisdiction that has the most "significant interest in, or relationship to, the dispute." *See Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir.1997). Emphasized in that analysis are "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *See id.*

As set forth above, this oral agreement was negotiated and entered into by individuals located in Pakistan, Abu Dhabi, the Cayman Islands, and Luxembourg, while the actual transfer of funds occurred in New York. It is unclear what negotiations occurred in which country, although all of State Bank's activity in relation to the transaction was conducted in Pakistan. It is undeniable, however, that the place of contracting, the location of the parties to these transactions, and the place of negotiation of this contract were all located outside of the United States. Performance of the oral contract is split between the United States—where the funds were actually transferred—and either Abu Dhabi or the Cayman Islands, where BCCI Overseas officials ordered the transfer of the funds. In light of these facts, the "center of gravity" of this transaction is located outside of the Untied States.

The interest analysis for choice of law purposes is similar to the overall interest analysis discussed above and favors primarily Pakistan. Courts have applied New York law to transactions involving a foreign entity where it is apparent that the transactions were purposely executed in dollars so that the parties would be protected by the security of the American banking and legal systems. *See Wells Fargo,* 936 F.2d at 726; *Optopics Laboratories Corp. v. Savannah Bank of Nigeria, Ltd.,* 816 F.Supp. 898, 904–05 (S.D.N.Y. 1993); *J. Zeevi,* 37 N.Y.2d at 227, 371 N.Y.S.2d at 898, 333 N.E.2d at 172.

However, the actions in which New York law has been applied to international financial transactions differ from this action in two respects: 1) at least one of the parties in those transactions was a United States entity; and 2) the parties purposely conducted the transactions in dollars with the expectation that New York law would be applied. *See Wells Fargo,* 936 F.2d at 726; *J. Zeevi,* 37 N.Y.2d at 227, 371 N.Y.S.2d at 898, 333 N.E.2d at 172. Here, both of the parties are foreign entities, and it is not apparent why the transaction was denominated in dollars. Therefore, at this point in the litigation, because both the "center of gravity" approach and the interest analysis weigh in favor of the application of foreign law, it is highly probable that foreign law would be applied if this action were to continue before this Court, a probability that favors dismissal of the action.

The issues of court congestion and jury inconvenience weigh in favor of neither forum. It cannot be disputed that the Southern District of New York is "one of the 'congested centers' of litigation referred to in *Gilbert....* " *Red Rock Hold-*

*ings, Ltd. v. Union Bank Trust Co.,* 1998 WL 474094, at *10 (S.D.N.Y. Aug.11, 1998) (quoting *Doe v. Hyland Therapeutics Div.,* 807 F.Supp. 1117, 1128 (S.D.N.Y.1992)); *Georgiadis v. First Boston Corp.,* 1994 WL 392229, at * 5 (S.D.N.Y. Jul.27, 1994). Based upon the data supplied by both experts in this case, it also cannot be disputed that it ordinarily takes longer to litigate actions in Pakistan than in this Court. However, as indicated by State Bank's expert, if this action falls under the expedited procedures of the Banking Act it could be tried within 90 days, which would be faster than a trial in this Court. *See* Zahid Reply Dec. at ¶¶ 21–24. Thus, concerns of court congestion appear to be equally balanced between the two fora. Moreover, the Court need not consider the issue of jury inconvenience because the FSIA prohibits a jury trial in this action. *See* 28 U.S.C. §§ 1330, 1441(d).

### 2. *Private Interest Factors*

■ The first three private interest factors—ease of access to sources of proof, availability of compulsory process, and the cost of witnesses to attend trial—all favor Pakistan. None of the witnesses or evidence relevant to this action (save for documents that BCCI Overseas claims are in the possession of its American counsel) are located in the United States. All of State Bank's witnesses and evidence are located at its offices in Pakistan, while BCCI Overseas' witnesses and evidence are located in Abu Dhabi, the Cayman Islands, and Luxembourg. None of the non-party witnesses would be subject to this Court's subpoena power, and litigation in this Court would require all of the witnesses to travel a substantial distance.

Pakistan, on the other hand, represents the forum that would be most convenient for the largest number of witnesses and greatest amount of evidence. Moreover, if this action were to proceed in Pakistan, BCCI Overseas would presumably be able to compel attendance of all relevant defense witnesses. BCCI Overseas contends that Pakistan would be more inconvenient than this Court for its witnesses because testimony in Pakistani courts is taken in a piecemeal fashion, sometimes lasting a number of years, which would necessitate numerous trips to Pakistan by BCCI Overseas' lawyers and witnesses. This piecemeal process, however, can be avoided if the litigation proceeds pursuant to the Banking Act or if the parties agree to the recording of evidence and witnesses before a court appointed commissioner. *See* Zahid Reply Dec. at ¶¶ 21, 35. In regard to the location of witnesses and evidence, Pakistan is a much more convenient forum than this Court.

Another private interest factor that weighs heavily in favor of dismissal is the fact that BCCI Overseas may be forced to bring an enforcement action in Pakistan to collect on any judgment obtained in an action held before this Court. *See Allstate Life Ins. Co. v. Linter Group, Ltd.,* 994 F.2d 996, 1001 (2d Cir.1993). Pursuant to 28 U.S.C. § 1611, the property of a foreign central bank held "for its own account" is immune from attachment in the United States. Funds are considered to be "held for a central bank's own account" if they are used to perform functions that are normally understood to be the functions of a nation's central bank, and are not utilized in commercial activities. *See Weston Compagnie de Finance Et D'Investissement, S.A. v. La Republica del Ecuador,* 823 F.Supp. 1106, 1113 (S.D.N.Y.1993), *Banque Compafina v. Banco de Guatemala,* 583 F.Supp. 320, 322 (S.D.N.Y. 1984).

BCCI Overseas alleges that State Bank's U.S. funds are not held "for its own account"; however it offers no evidence to prove this fact. State Bank on the other hand has produced the declaration of Rachid Akhtar Chughtai, Deputy Governor of State Bank, that State Bank has no branches in the United States, conducts no commercial business here, and the only funds held by State Bank in the United States constitute its foreign reserves,

which would not be subject to attachment pursuant to § 1611. *See* Chughtai Reply Dec. at ¶¶ 6–8. Based upon this evidence, it is probable that BCCI Overseas would be forced to litigate in Pakistan even if this action proceeded to judgment in this Court, a probability that favors dismissal of this action.

## IV. Conclusion

This action involves two foreign entities that entered into a transaction outside of the United States. The action's connection to the United States is tenuous at best; in fact, if State Bank were merely a foreign citizen and not an agency or instrumentality of a foreign state, this Court would lack subject matter jurisdiction over this dispute. The U.S. Supreme Court suggested that forum non conveniens dismissal would be appropriate in actions such as this where both parties are foreign entities, the FSIA is the sole basis for federal jurisdiction, and jurisdiction pursuant to the FSIA is achieved through a waiver of sovereign immunity. *See Verlinden*, 461 U.S. at 491 n. 15, 103 S.Ct. at 1970 n. 15. Based upon the evidence before it, the Court concludes that Pakistan is an adequate and more appropriate forum for this litigation and that this action should be dismissed without prejudice to the merits of plaintiff's claims.

To protect BCCI Overseas' rights, the dismissal of this action is made conditional upon the following: 1) State Bank must waive in writing any statute of limitations defense that may be available to it in the Pakistani courts; 2) the Pakistani courts do not refuse to hear this case on statute of limitations grounds; and 3) State Bank must agree to allow BCCI Overseas to remove any judgment received in a Pakistani court out of Pakistan. Accordingly, defendant's motion is granted and this action is dismissed, subject to the above listed conditions.