George Postel, J.
Plaintiff herein, a resident of Illinois, commenced this action to recover damages for injuries allegedly incurred at the Missouri Pavilion at the New York World’s Fair. Defendant Missouri New York World’s Fair Commission has moved to dismiss the complaint as to it for want of jurisdiction by this court of the subject matter. It is this defendant’s contention that the suit is, in effect, a suit against the State of Missouri and is, therefore, exclusively within Federal jurisdiction, if the State is at all amenable to suit. By resettled order dated September 14, 1965, “ the issues raised on this motion, including whether said defendant is, in fact, the State of Missouri or an agency of said State or if it is serving a non-governmental function in operating a commercial enterprise and such other facts as may bear upon the defenses of lack of jurisdiction and sovereign immunity ” were directed to be set down for trial.
The Missouri New York World’s Fair Commission is a creature of the Missouri General Assembly. Its composition includes five members of the State Senate, five members of the State House of Representatives, and five from the State at large. The Governor, the President pro tern of the Senate, and the Speaker of the House, are ex officio members of the commission. The commission was charged to arrange for the active participation by the State of Missouri in the New York World’s Fair of *378 1964, with the co-operation of appropriate departments of that State.
Pursuant to this statutory authority, the commission selected a site and entered into a lease with the New York World’s Fair 1964-1965 Corporation in which it was granted the right to occupy the selected site, and agreed, among other things, to construct a pavilion and procure and pay for comprehensive public liability insurance in accordance with the rules and regulations of the fair corporation. Thereafter, the commission entered into contracts with various State agencies, the Kansas City World’s Fair Committee, Inc., the Universal Match Corporation, the McDonnell Aircraft Corporation, the World’s Fair Committee of the Missouri Electric Companies, and other corporate groups for the purpose of having the contracting parties exhibit, display, sell or dispense services in accordance with their respective special interests.
In determining the tort liability of a State, the primary question is always whether the occurrence causing the alleged injury or damage was an incident of a “ governmental ” or “ proprietary ” function of the State, the general rule being that the principle of “ sovereign immunity ” controls if the operation fits into the former classification, and that liability may be found if it fits into the latter (see 81 C. J. S., States, § 214 et seq.).
in the instant case, it is quite obvious that the State of Missouri created an instrumentality to engage in operations to amuse, educate and entertain visitors because, in the words of its enabling legislation, it was “ of great economic importance to (the) State.” When a State enters into activities designed to divert the public, it is acting in a proprietary capacity (see Pianka v. State of California, 46 Cal. 2d 208), and when such nongovernmental conduct is conducted extraterritorially the defense of sovereign immunity is unavailable (Georgia v. City of Chattanooga, 264 U. S. 472).
Even if the defense of sovereign immunity were available, there is a question as to whether it was waived by the procurement of liability insurance at least to the extent of policy coverage, since the rationale underlying the doctrine is protection against dissipation of public funds. While there appears to be no New York authority on this point, the prevailing view indicates that governmental immunity is unaffected by the procurement of liability or indemnity insurance (see Ann. 68 ALR 2d 1437). The minority rule to the contrary is based on the Iheory that public funds are no longer threatened. It is noteworthy that the note writer cited above regards the latter view *379 as ‘ ‘ worthy of characterization as enlightened ’ ’ (op. cit. p. 1448).
As to whether this is the proper forum for the current action, article III (§2) of the Federal Constitution provides that the judicial power of the United States extends “ to Controversies * * * between a State and Citizens of another State ’ ’. This provision, while it vests in the Federal courts jurisdiction in such matters, does not, of itself, divest the State courts of jurisdiction so long as appropriate jurisdictional facts exist within the State (Plaquemines Fruit Co. v. Henderson, 170 U. S. 511). It must, therefore, be concluded insofar as the present controversy is concerned that this State has at least concurrent jurisdiction with the Federal courts. Whether or not grounds are available for removal of this case to the Federal court is of no concern to this forum. Unless and until such removal might be effected, this State has jurisdiction over the subject matter of this action.