Cooke, J.
Defendant appeals from an order of the Appellate Division, First Department, which unanimously affirmed an order of the Supreme Court, New York County, granting the motion of plaintiff J. Zeevi and Sons, Ltd., for partial summary judgment on the first cause of action in the complaint, denying defendant’s cross motion for summary judgment on both causes of action in said pleading, directing entry of judgment in favor of said plaintiff on said first cause of action and severing and continuing the remaining cause, as well as from the judgment entered thereon.
The first cause of action in the complaint involves an irrevocable letter of credit, dated March 24, 1972, numbered 110/84 and in the sum of $406,846.80. The second cause contains allegations regarding the deposit of a check with defendant on March 24, 1972 and the opening on the next day by defendant of an irrevocable letter of credit numbered 110/ 85 for $203,423.40. Allegedly, each letter of credit was drawn to plaintiff partnership. Plaintiffs assert that there are issues of fact warranting trial in respect to the latter transaction.
The pertinent factual picture unfolds without dispute. On March 24, 1972, Hiram Zeevi & Company (Uganda) Ltd., an Israeli corporation, deposited with defendant, Grindlays Bank (Uganda) Ltd., local currency valued at approximately $406,846.80, for the purpose of establishing a fund upon which plaintiff J. Zeevi and Sons, an Israeli copartnership, could draw money. On the same date, defendant opened its irrevocable credit No. 110/84 for $406,846.80 in favor of said partnership and issued a letter of credit acknowledging that it had *224 opened the irrevocable credit for "$406,846.80 (U. S. dollars four hundred and six thousand eight hundred and forty six cents eighty)”, and provided that the credit amount be available against clean drafts drawn on the depositor in equal amounts of $40,684,68 commencing April 15, 1972 and monthly thereafter. It stated "[t]his credit is valid until 31st January, 1973 for presentation of drafts in Kampala.” The letter concluded with these provisions:
"We guarantee the payment of drafts drawn in conformity with the terms and conditions stated. The negotiating bank must send drafts direct to us by air-mail.
"The negotiating bank is authorized to claim reimbursement for their payments on the due dates listed above from [First National City Bank, 399 Park Avenue, New York] to the debit of our account with them together with a certificate to the effect that all terms of the credit have been complied with and the relative drafts have been airmailed to us.”
By directives dated March 28, 30 and April 13, 1972, officials of the Bank of Uganda, acting with the authority of the Minister of Finance under the Exchange Control Act of Uganda, notified defendant that foreign exchange allocations in favor of Israeli companies and nationals should be canceled and, accordingly, ordered it to make no foreign exchange payments pursuant to credit number 110/84. While, on April 4, 1972, defendant had informed its New York agent, First National City Bank (hereinafter Citibank), of the issuance of the letter of credit for "credit No. 110/84”, defendant advised said agent, by cable dated and received April 14, 1972 and by letter of April 17, 1972, that the Government of Uganda had instructed it to cancel the letter of credit numbered 110/84 and directed said agent not to "effect payment against drawing US $40684-68 due to be paid on or after 15th April 1972”. A cable and letter bearing the same respective dates and a corresponding message were forwarded by defendant to said partnership. A letter dated May 5, 1972 from defendant stated: "In the circumstances we have had no option but to instruct our agents in New York not to effect reimbursement of the drawing due to be made on 15.5.1972 without further reference to us.”
On December 28, 1972 Chemical Bank ("Chemical”) presented to Citibank for reimbursement 10 drafts each for $40,684.68, totaling $406,846.80, drawn under letter of credit 110/84, and on January 11, 1973 Chemical wrote to Citibank *225 that "we are again presenting our domestic collection R92049 in the amount of $406,846.80 under irrevocable letter of credit 110/84, reimbursable on your good selves and ask for reimbursement as per the terms and conditions thereof.” On January 19, 1973 Citibank returned the subject drafts unpaid to Chemical.
'This action by the partnership, the beneficiary of the two letters of credit, and J. Zeevi and Sons, Ltd., the assignee of said partnership, was commenced by an order of attachment on November 24, 1972, whereby the funds of defendant on deposit with Citibank were attached and defendant was served by publication. Supreme Court denied defendant’s motions to dismiss for lack of jurisdiction and to increase the amount of plaintiff’s bond on the attachment and to reduce the amount of the attachment, both of which orders were affirmed by the Appellate Division.
Defendant contends that the complaint must be dismissed because the court lacks subject matter jurisdiction, that the law of the Republic of Uganda applies and under it the complaint must be dismissed, that the decision under review is contrary to the act of State doctrine, and that said decision violates the Bretton Woods Agreement.
Subdivision 2 of section 200-b of the Banking Law, entitled "Actions maintained against foreign banking corporation; residents; foreign corporations, foreign banking corporations as nonresidents”, provides in part:
"2. Except as otherwise provided in this chapter, an action * * * against a foreign banking corporation may be maintained by another foreign corporation or foreign banking corporation or by a nonresident in the following cases only:
* * *
"(c) where the cause of action arose within this state, * * *M
Subdivision (b) of section 1314 of the Business Corporation Law contains almost identical language.
A letter of credit, a well-known instrumentality of commerce (Kingdom of Sweden v New York Trust Co., 197 Misc 431, 441), is governed by the same general principles of law as are all other contracts in writing (Moss v Old Colony Trust Co., 246 Mass 139, 151; Bank of United States v Seltzer, 233 App Div 225, 229). It is either revocable or irrevocable and, once the latter has been established, the consent of all parties, particularly the beneficiary, is necessary in order to modify *226 the original terms and conditions of the credit (Lamborn v National Park Bank of N. Y., 240 NY 520, 525; Dulien Steel Prods. of Wash. v Bankers Trust Co., 189 F Supp 922, 927, affd 298 F2d 836).
The first cause of the complaint alleges and the facts establish a cause of action occurring within New York. In the irrevocable letter of credit 110/84 under scrutiny, defendant contracted to pay upon compliance with its terms (Lamborn v National Park Bank of N. Y., supra, at p 525) and defendant’s order countermanding payment by cable and letter took effect upon receipt by Citibank in New York and then gave rise to a cause of action here (Gonzalez v Industrial Bank [of Cuba], 12 NY2d 33, 38). Citing Hibernia Nat. Bank v Lacombe (84 NY 367), this court stated in Gonzalez that "a cause of action arises where that is done which should not be done”. In this instance, New York was the locus of repudiation, whereas it should have been a site of payment. The provision respecting reimbursement in New York was an integral part of that for which the parties bargained, it was not a discrete obligation. The separate character of defendant’s undertakings is negated by its guarantee of payment of drafts. The value to those in commerce of having a place at a financial capital where funds can be obtained on a simple letter of credit, away from a relatively small bank in an undeveloped country of uncertain political stability, is obvious. The reimbursement provision is quite essential, economically, to the total arrangement since a promisee would be unwilling to present a draft based on a letter of credit, in dollar terms, to a commercial house in the United States and then be required to wait a relatively inordinate time for the money to come from a remote source.
When defendant, the issuer, repudiated the letter of credit before presentment of the draft and before expiration of the letter, it was guilty of an anticipatory breach of contract and became liable for damages caused the beneficiary (Foglino & Co. v Webster, 217 App Div 282, 297-298, mod on other grounds 244 NY 516; Doelger v Battery Park Nat. Bank, 201 App Div 515, 521-522; Mendelson v Wechsler, 203 NYS 197; 34 NY Jur, Letters of Credit, § 38; see Uniform Commercial Code, § 5-115).
We come, now to the question of the choice of law. " '[T]he rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts *227 which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict’ ” (Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, 382). New York has an overriding and paramount interest in the outcome of this litigation. It is a financial capital of the world, serving as an international clearinghouse and market place for a plethora of international transactions, such as to be so recognized by our decisional law (Intercontinental Planning v Daystrom, Inc., supra, at pp 383-384). A vast amount of international letter of credit business is customarily handled by certain New York banks whose facilities and foreign connections are particularly adaptable to this field of operation (34 NY Jur, Letters of Credit, § 10, p 427). The parties, by listing United States dollars as the form of payment, impliedly accepted these facts and set up procedures to implement their trust in our policies. In order to maintain its pre-eminent financial position, it is important that the justified expectations of the parties to the contract be protected (cf. Kossick v United Fruit Co., 365 US 731, 741). Since New York has the greatest interest and is most intimately concerned with the outcome of this litigation, its laws should be accorded paramount control over the legal issues presented (cf. Auten v Auten, 308 NY 155, 161).
As typified by strong anti-Israel and anti-semitic suggestions made by Uganda’s President to the Secretary General of the United Nations, the Bank of Uganda, by message dated March 28, 1972 and marked "TOP SECRET”, directed defendant that "all payments to Israel companies and their agents, and to the Government of Israel whether by cheques * * * or by letters of credit, should not be processed until clearance has been obtained from the undersigned.” Sixteen days later in a message marked "CONFIDENTIAL” and to which was attached references to letters of credit 110/84 and 110/85, defendant was informed that "[t]here can never be any basis for the expenditure of foreign exchange unless value in the form of goods has been received in Uganda” and that "no foreign exchange payment should be effected on any of the allocations already advised to you on behalf of any Israel company.” Defendant contends that these revocations or cancellations of foreign exchange allocations in favor of the beneficiary of credit number 110/84 were authorized by the Exchange Control Act of Uganda.
Laws of foreign governments have extraterritorial jurisdic *228 tion only by comity (Huntington v Attrill, 146 US 657, 669; Mertz v Mertz, 271 NY 466, 470). The principle which determines whether we shall give effect to foreign legislation is that of public policy and, where there is a conflict between our public policy and application of comity, our own sense of justice and equity as embodied in our public policy must prevail (Vladikavkazsky Ry. Co. v New York Trust Co., 263 NY 369, 378). It is clear, that no attempted confiscatory or discriminatory act of the Ugandan Government, enforced or enacted after the issuance of letter of credit 110/84 could diminish the beneficiary’s rights in respect to reimbursement and defendant’s funds located in New York (see NY Const, art I, §§ 6, 11). There being no present policy of the executive branch of the United States Government requiring acquiescence in the confiscatory and discriminatory acts of the Ugandan Government, the well-known policy of this State against such acquiescence is operative (Gonzalez v Industrial Bank [of Cuba], 12 NY2d 33, supra, at p 39). Although the letter of credit when made was valid under the laws of Uganda, by virtue of subsequent governmental action the contract became unenforceable in that country. This action, however, was of no force in New York and the doctrine of impossibility of performance lends no comfort to defendant.
Neither does the Federal act of State doctrine apply. The essence of this legal principle is that the courts of this country cannot question an act of a recognized foreign Nation committed within its own territory, no matter how grossly that sovereign has transgressed its own law (see Banco Nacional de Cuba v Sabbatino, 376 US 398, 416; French v Banco Nacional de Cuba, 23 NY2d 46, 52). The doctrine is not applicable here since a debt is not "located” within a foreign State unless that State has the power to enforce or collect it (cf. Republic of Iraq v First Nat. City Bank, 353 F2d 47, 51, cert den 382 US 1027; see, also, Menendez v Saks & Co., 485 F2d 1355, 1364, cert granted on other grounds sub nom. Alfred Dunhill of London v Republic of Cuba, 416 US 981).
Defendant urges that enforcement of the letter of credit contract would violate the foreign exchange laws of Uganda in disregard of a treaty. Uganda and the United States are signatories to the Bretton Woods Agreement (60 US Stat 1401 et seq.) which, in relevant part under article VIII (§ 2, subd [b]), provides: "Exchange contracts which involve the currency of any member and which are contrary to the exchange *229 control regulations of that member maintained or imposed consistently with this Agreement shall be unenforceable in the territories of any member.” Contrary to defendants’ position, the agreement, even when read in its broadest sense, fails to bring the letter of credit within its scope, since said letter of credit is not an exchange contract. In Banco Do Brasil S. A. v Israel Commodity Co. (12 NY2d 371, 375-376), this court frowned on an interpretation of said provision of the Bretton Woods Agreement which "sweeps in all contracts affecting any members’ exchange resources as doing considerable violence to the text of the section”.
The order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.