OPINION OF THE COURT
Edward J. Greenfield, J.
The instant action, which was commenced in 1962, has its genesis in events which occurred over 30 years ago in connec *768 tion with the proposed establishment of an aluminum industry in Argentina. The plaintiff in this action, Anthony Mirabella, is the assignee of Franco Gronda, an Italian entrepreneur who was the sole proprietor of a business operated under the name of SILPA. Gronda was to relocate to Argentina two industrial plants and build a hydroelectric plant to generate the necessary power. In addition, Gronda was to be permitted to import aluminum for resale or fabrication. Gronda obtained financing for the importation of two industrial plants and aluminum ingots and plates from defendant, Banco Industrial de la República Argentina, which had been established pursuant to a presidential decree to promote industrial development in Argentina. Defendant bank was capitalized with government funds and had the power, inter alia, to grant loans to industrial enterprises through long-term and short-term credits.
In March and April of 1948, defendant issued six letters of credit in favor of SILPA to finance the importation of the two plants and aluminum ingots and plates. The letters of credit were payable at three banks in Italy and Switzerland. On August 18, 1948, allegedly acting on instructions of the Central Bank of the Republic and at the direction of Juan Perón, the President of the Republic, defendant sent cables to the three banks directing them to suspend further payments. The suspension was never lifted and the credits expired.
In this action, plaintiff seeks to recover $85,000,000 based on the cancellation of the letters of credit, which totaled $26,000,-000. Defendant contends that the cancellation of the letters of credit was an "Act of State”, and has asserted Act of State as an affirmative defense. The Act of State doctrine precludes the courts of this country: “from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.” (Banco Nacional de Cuba v Sabbatino, 376 US 398, 401.)
The essence of the principle is that the courts of this country will not question the acts of recognized foreign nations committed within their own territories. (Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, cert den 423 US 866.)
The doctrine of Act of State, which is a manifestation of judicial abstention, is distinct from that of sovereign immunity. In this action, defendant had asserted both sovereign immunity and Act of State as affirmative defenses; however, the defense of sovereign immunity was dismissed over 15 *769 years ago. The defense of Act of State was not asserted until 1969, leave to amend having been granted by the court.
Before the court is a motion by plaintiff for summary judgment dismissing the Act of State defense and a cross motion by defendant for summary judgment on that defense.
It is defendant’s position that the suspension of payment under the letters of credit constitutes an Act of State because it was done at the direction of the Central Bank of the Republic and President Perón. However, assuming, arguendo, that the suspension was ordered or directed by the Central Bank and/or President Perón, the court is not necessarily precluded from inquiring into the validity of the suspension. In the first place, no statute, decree, order or resolution of the Argentine government canceling the credits was issued. Secondly, notwithstanding defendant’s arguments to the contrary, the issuance of the credits was a "commercial transaction,” and "Repudiation of a commercial debt cannot, consistent with th[e] restrictive approach to sovereign immunity, be treated as an act of state; for if it were, foreign governments, by merely repudiating the debt before or after its adjudication, would enjoy an immunity which our Government would not extend them under prevailing sovereign immunity principles in this country. This would undermine the policy supporting the restrictive view of immunity,* which is to assure those engaging in commercial transactions with foreign sovereign-ties that their rights will be determined in the courts whenever possible.” (Dunhill of London v Cuba, 425 US 682, 698-699.)
Although a specific exception to the doctrine for commercial activities was recognized by only four Justices in Dunhill, the decision has been construed by the Second Circuit as reaffirming the doctrine of Act of State in traditional terms by refusing to apply it to actions where a sovereign is sued for commercial activities. (Hunt v Mobil Oil Corp., 550 F2d 68, cert den 434 US 984.) In the case at bar, the asserted basis for directing suspension of payments was fraud on the part of Gronda. The repudiation of obligations for commercial reasons is not the type of public act to which foreign courts should defer. As noted by a plurality of the court in Dunhill, those engaging in commercial transactions with foreign sovereign- *770 ties should have their rights determined in the courts whenever possible.
Moreover, although there is no hard and inflexible rule, the doctrine of Act of State has generally been limited to acts of a foreign government within its own territory in the exercise of public or governmental functions. (See, e.g., Banco Nacional de Cuba v Sabbatino, 376 US 398, supra.)
To the extent that defendant relies on the Court of Appeals decision in French v Banco Nacional de Cuba (23 NY2d 46) its reliance is misplaced. That action stemmed from an exchange control regulation of the Cuban government which, in effect, prevented American arid other foreign investors from receiving currency, other than Cuban pesos, on their Cuban investments. Plaintiff, who had invested moneys in a Cuban farm, had received certificates of tax exemption permitting him to receive from the National Bank against delivery of the certificate and pesos, a check for the equivalent in United States dollars, exempt from Cuba’s tax on the exportation of money. Based on a finding that the regulation was issued by an official instrumentality of the Cuban government and that based thereon the National Bank refused to and continues to refuse to exchange pesos for dollars, the court held that the breach of contract, of which plaintiff complained, resulted from and constituted an Act of State.
In French (supra), the Court of Appeals was dealing with a measure adopted to control currency and foreign exchange, which the court noted was similar to regulations enacted by many other countries including our own and that such regulations, at least when presented in a context such as the present case, are not appropriate subjects for evaluation, by State courts applying local conceptions of public policy.
In the case at bar, we are not dealing with a general regulation or decree, i.e., a public act, but rather with the suspension of payments on letters of credit issued in connection with a specific commercial transaction. The case at bar is analogous to that presented in Dunhill (425 US 682, supra) in which the court refused to apply the Act of State doctrine to the Cuban intervenors’ refusal to repay certain moneys paid to them by mistake. A majority of the Supreme Court held that the refusal to pay did not constitute an Act of State, inasmuch as the refusal to pay, in and of itself, did not necessarily assert anything more than the claim that there was no obligation to return payments made on these accounts. *771 As in the case at bar, there was no demonstration that the Cuban intervenors had authority to repudiate all or any part of the debts incurred by their business. To the contrary, "No statute, decree, order, or resolution of the Cuban Government itself was offered in evidence indicating that Cuba had repudiated its obligations in general or any class thereof or that it had as a sovereign matter determined to confiscate the amounts due three foreign importers.” (Dunhill of London v Cuba, 425 US 682, 695, supra.)
Similarly, in the case at bar there is no statute, order or resolution of the Argentine government directing the suspension. Were this court to accept defendant’s contention that the direction by President Perón and/or the order of the Central Bank, in the structure of the Argentine government, rises to the level of a statute, decree, order or resolution, the court is still not precluded from inquiry into the validity of suspension of payment.
As noted by Mr. Justice White, in the portion of the opinion concurred in by a plurality of the court recognizing a commercial exception to the Act of State doctrine: "subjecting foreign governments to the rule of law in their commercial dealings presents a much smaller risk of affronting their sovereignty than would an attempt to pass on the legality of their governmental acts. In their commercial capacities, foreign governments do not exercise powers peculiar to sovereigns. Instead, they exercise only those powers that can also be exercised by private citizens. Subjecting them in connection with such acts to the same rules of law that apply to private citizens is unlikely to touch very sharply on 'national nerves.’ ” (Dunhill of London v Cuba, supra, pp 703-704.)
In the case at bar, we are dealing with letters of credit which were canceled for purely commercial reasons, i.e., alleged fraud. Whether defendant, as it contends, acted at the direction of the Central Bank or pursuant to President Perón’s alleged direction that measures be taken to avoid further damage to the country, that the credits be annulled and an investigation commenced, the court is not barred from entertaining this action. This is not a case such as French (23 NY2d 46, supra) where the court would become embroiled in evaluating regulations or decrees of foreign governments. To the contrary, the underlying issue here is whether there was, in fact, fraud. Moreover, disposition of this suit does not require this court to sit in judgment on acts of the govern *772 ment of another done within its own territory, which is the underlying rationale of the Act of State doctrine (Underhill v Hernandez, 168 US 250). In the case at bar, we are dealing with extraterritorial directives. Swiss and Italian banks were ordered by defendant to suspend payment. Thus, this is not a case involving acts of a foreign country committed within its own territory and accordingly the Act of State doctrine is inapplicable; all that defendant is entitled to is consideration of whether it had grounds to suspend payment. (See Republic of Iraq v First Nat. City Bank, 353 F2d 47, cert den 382 US 1027.)
Defendant’s attempts to show that it could have enforced the directive to suspend payment within Argentina are not persuasive. In the first place, this was not done. Secondly, whatever bookkeeping adjustments could have been made at the Central Bank after the fact, the only way to stop the Italian and Swiss banks from paying on the letters of credit was to direct them to suspend payment.
Our conclusion that the Act of State defense is without merit finds additional support in Zeevi & Sons v Grindlays Bank (Uganda) (supra). The Court of Appeals, applying Dunhill (supra) and Republic of Iraq (supra), refused to apply the Act of State doctrine to prevent judicial scrutiny of the repudiation by the government of Uganda of letters of credit issued in Uganda and payable in New York.
Based on the foregoing, plaintiff’s motion for summary judgment dismissing the Act of State defense is granted and the cross motion is denied.

 The restrictive view eliminates the defense on claims arising from commercial acts (jure gestionis) as opposed to governmental acts (jure imperii) of a sovereign.