OPINION OF THE COURT
Raymond E. Cornelius, J.
An application has been made by Debra Crumpton for an order approving a proposed settlement, in the above-captioned action, on behalf of the two infant plaintiffs. Unless there has been an appointment of a guardian ad litem, as provided by CPLR 1202, a person under the age of 18 may only appear by one of the other representatives enumerated in CPLR 1201. These would include a guardian of the property, or if there be none, a parent having legal custody, or if no such parent, by another having legal custody, or if the infant is married, by an adult coresident spouse. In the event of a settlement on behalf of such an infant, a motion for approval must be made to the court by one of these representatives as provided in CPLR 1207. In the pending matter, both the affidavit of Debra Crumpton and plaintiffs counsel assert that she is the grandmother and “legal guardian” for the two infant plaintiffs.
The procedure for settlement of a civil action on behalf of a person under the age of 18 is set forth in some detail in CPLR 1208, which requires, among other information to be submitted to the court, an affidavit from the representative, an attorney affidavit, and medical or hospital reports.[1] The affidavit submitted on behalf of Debra Crumpton indicates that the children, who were 13 and 11 years of age respectively at the time of the application, have resided with her at least since 1996. She further states that during that year she and the children moved into an apartment of a building located at 18 Kappel Place, Rochester, New York, which was owned by the defendant, Stuart Most. Ms. Crumpton asserts that there was “extensive chipping and peeling in the interior and exterior of the apartment,” and that the landlord failed to take any remedial action to correct this paint condition. A report from the Lead Poisoning Prevention Program of the Monroe County Department of Health confirms lead paint violations were found following an inspection on September 26, 1996.
According to Debra Crumpton, she and the children moved out of 18 Kappel Place in early 1997. Laboratory tests, which *577 were submitted to a pediatrician, indicate that during August 1996 and thereafter both children had blood lead concentrations greater than the 10 micrograms per deciliter which is the level of concern as determined by the Centers for Disease Control and Prevention.[2] Ms. Crumpton alleges that both of her grandsons have sustained cognitive damages resulting in developmental delays, and, at present, are performing below their respective grade levels in school.
Before approving the proposed settlement for each child, the court requested documentation of Debra Crumpton’s authority to make this application as guardian for her grandchildren. In response, counsel provided a copy of what purports to be a power of attorney executed by Tanya Crumpton, natural mother of the children, on October 14, 2003. It appears that Tanya Crumpton executed this instrument while incarcerated at the federal prison in Danbury, Connecticut, and it is the court’s understanding that she continues to be an inmate of this facility at the present time. In relevant part, the power of attorney recites that Tanya Crumpton has appointed Debra Crumpton to have “full power-of-attorney . . . with respect to the care and temporary custody” of her children, as follows:
“[I]n matters affecting including but not limited to, medical needs (including consent to emergency and routine medical care, any necessary hospitalization, inoculation, psychiatric or psychological treatment, surgical or dental care, administration of anesthesia), schooling, (including consent to any and all educational and cultural experiences,) public assistance (including AFDC, Food Stamps), Medicaid, legal matters, and all other matters pertaining to the well-being of my children.”
Also, Tanya Crumpton, in this document, asserts that it is her intention to resume responsibility and full custody of her children upon her release from prison. Thus, the question arises whether or not this power of attorney was legally sufficient to confer upon Debra Crumpton authority to make application for an infant settlement under CPLR article 12.
First, contrary to the representation contained in her affidavit, as well as her attorney’s affidavit, it is clear that Debra Crumpton is not the legal guardian for the two children. A guardian for an infant may be appointed by a court order, pur *578 suant to CPLR 1210 or Surrogate’s Court Procedure Act § 1701, by following the statutory procedures contained in these respective laws. For example, CPLR 1210 requires a formal petition to be submitted by the infant, if over the age of 14 years, or a relative or a friend, followed by a hearing to be conducted by the court. Alternatively, Domestic Relations Law § 81 provides that upon the death of one parent, the other parent may, by deed or last will, appoint a third person as guardian. In the pending matter there is no indication that the father of either child is deceased, or, indeed, any information about them. Accordingly, the court concludes that the power of attorney is ineffective to confer guardianship upon the grandmother, even assuming that it were otherwise properly executed and recorded as required (Domestic Relations Law § 81).
As aforementioned, in the absence of a guardian or parent CPLR 1201 does make provision for an infant to appear in a legal action by another person having legal custody. The question then becomes whether or not the power of attorney, executed by the mother in the State of Connecticut, is legally sufficient to confer legal custody to the grandmother.
Recently, one member of a three-judge panel for the United States Court of Appeals, Third Circuit, observed that “New York law . . . does not define the term legal custody.’ . . . Nor does any case from the Court of Appeals, New York’s highest court, define or explicate the phrase” (Bagot v Ashcroft, 398 F3d 252, 261 [3d Cir 2005]). This decision involved a deportation proceeding, under the Immigration and Nationality Act, and one member of the court found it necessary to attempt to discern the meaning of the concept under New York law. The judge only found three reported cases containing some indication of what New York courts believe constitutes “legal custody,” two of which were decided in the context of CPLR article 12 (Otero v State of New York, 159 Misc 2d 35 [1993]; Villafane v Banner, 87 Misc 2d 1037 [1976]). As discussed in the Circuit Court’s decision, in situations involving the separation of natural parents, these New York decisions, in addition to physical custody, require a judicial decree. Villafane involved a grandmother who had “informal custody” of a child, but the court determined that, although married parents may share legal custody for purposes of CPLR 1201, if separated, legal custody would require a judicial decree.
Exceptional circumstances are required before a court may grant an order awarding custody to a nonparent. The New York *579 State Court of Appeals has held that “[n]o court can, for any but the gravest reasons, transfer a child from its natural parent to any other person . . . , since the right of a parent, under natural law, to establish a home and bring up children is a fundamental one and beyond the reach of any court” (People ex rel. Portnoy v Strasser, 303 NY 539, 542 [1952], citing Meyer v Nebraska, 262 US 390, 399 [1923]). There are statutory provisions for the Supreme Court to make an order of custody, within the context of a matrimonial action, or for the Family Court to issue such an order, based upon referral from Supreme Court or by petition and order to show cause initially filed in that court (see Domestic Relations Law § 240; Family Ct Act § 651). However, a court may not award custody to a nonparent absent proof of surrender, abandonment, persistent neglect or unfitness on the part of the natural parent, or other similar extraordinary circumstances (Matter of Bennett v Jeffreys, 40 NY2d 543 [1976]). Arguably, in the pending case, depending upon the circumstances involving the respective fathers of the children, the fact that the mother is imprisoned may be sufficient to justify transfer of legal custody to the grandmother. However, this would require the issuance of a court order, either from the State of Connecticut or the State of New York.
There is no authority contained in the General Obligations Law for legal custody to be transferred to another person by means of a power of attorney. The statutory short form of a general power of attorney does contain a provision for the transfer of powers over “personal relationships and affairs” (General Obligations Law § 5-1501 [1]). Although, by way of statutory construction, this term encompasses authority “to do all acts necessary for maintaining the customary standard of living of the spouse and children,” the illustrations stop far short of granting full legal custody (General Obligations Law § 5-15021 [1]). Pursuant to Laws of 2005 (ch 119), title 15-A was added to the General Obligations Law, effective June 30, 2005, in order to permit a parent of a minor to designate another person as a person in parental relation to such minor for the limited purpose of making certain health care and educational decisions and/or actions. The New York State Senate memorandum in support of this law noted that under current law it had been difficult for grandparents or other caregivers, who did not have legal custody, to sign relevant consent forms for educational or health care services, and that there had been an increase in the number of such grandparents or other non- *580 parent caregivers because of various reasons, including incarceration of the parents (Mem in Support, 2005 McKinney’s Session Laws of NY, at 2022).
Counsel for the applicant, in the pending case, contends that the court should apply the doctrine of comity and rule that the power of attorney, executed in Connecticut, is sufficient to confer legal custody. In this regard, the New York State Court of Appeals has stated that as follows:
“The doctrine of comity ‘is not a rule of law, but one of practice, convenience and expediency’ (Mast, Foos & Co. v Stover Mfg. Co., 177 US 485, 488). It does not of its own force compel a particular course of action. Rather, it is an expression of one State’s entirely voluntary decision to defer to the policy of another (Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, cert den 423 US 866).” (Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574, 580 [1980].)
The problem with counsel’s argument is the fact that there has been no showing that the law in the State of Connecticut, pertaining to powers of attorney and legal custody of children, is any different than in the State of New York. Indeed, the definition of “personal relationships” as contained in the Connecticut General Statutes § 1-52 is very similar to the aforementioned provisions of New York’s General Obligations Law.
Counsel does cite a statute from the State of Ohio, which, in essence, provides that “[t]he parent . . . of a child may create a power of attorney that grants to a grandparent of the child with whom the child is residing any of the parent’s . . . rights and responsibilities regarding the care, physical custody, and control of the child,” including the ability to make certain educational decisions and consent to medical treatment (Ohio Rev Code § 3109.52). Of course, these specific, enumerated powers would be similar to the authority contained in the recent amendment to the General Obligations Law in the State of New York. Nevertheless, the Ohio statute specifically states that such power of attorney “does not grant legal custody to the attorney in fact” (Ohio Rev Code § 3109.52).
Based upon the foregoing, this court concludes that, at least, for purposes of CPLR article 12, a court order is necessary before a grandparent or other nonparent may be considered to have legal custody of a child. Accordingly, a power of attorney is insufficient to confer legal custody in order to enable such indi *581 vidual to make application for approval of an infant settlement under the provisions of CPLR article 12. Similarly, not only does Ms. Crumpton lack standing to make such application, she would have lacked the contractual authority to enter into a contingency fee contract with the attorneys, or, for that matter, enter into settlement negotiations.[3] Nevertheless, the defendant, in this case, has made an offer of settlement, which, in the court’s opinion is fair and reasonable for each child. Accordingly, the court, on its own initiative, pursuant to the authority contained in CPLR 1202, will appoint Debra Crumpton as guardian ad litem for the purpose of making application for approval of the settlement. The appointment will be effective upon Ms. Crumpton filing a written consent, as required by CPLR 1202 (c), together with proof of obtaining a bond in the amount of $140,000. Although the property of an infant may not be distributed to a guardian ad litem, as distinguished, for example, from a guardian, the court may direct that money constituting any part of the property be deposited and invested as part of a structured settlement agreement (see CPLR 1206 [c]).
Accordingly, it is hereby ordered that Debra Crumpton be and hereby is appointed as guardian ad litem for each infant child, and it is further ordered that this appointment shall become effective upon Debra Crumpton filing a written consent, together with an affidavit showing the ability to answer for any damage sustained by negligence or misconduct in the form of a bond in the amount of $140,000, and it is further ordered that the Monroe County Clerk’s Office is hereby directed to amend the title of this action as it appears in the title of this decision and order.

. Also see 22 NYCRR 202.67, which requires the papers submitted in support of an infant settlement to set forth the total and unpaid doctor or hospital charges.

. Medical records also indicate that both children experienced elevated blood lead concentrations before moving to 18 Kappel Place.

. The written “Retainer Agreement,” in this case, was signed by Debra Crumpton “as Parent and Natural Guardian.”