OPINION OF THE COURT
Catterson, J.
In these dual actions arising from an alleged Ponzi scheme of global proportions, precedent mandates reversal of the motion court’s sua sponte dismissal of the main action on a forum non conveniens ground. Moreover, we find that dismissal of the related third-party action, on notice of motion, on a forum non *4 conveniens ground, was an improvident exercise of the court’s discretion. New York has a compelling interest in adjudicating controversies that implicate its preeminent position in the international banking system, and in any event, the third-party defendant failed to demonstrate that New York is an inconvenient forum.
Plaintiff Mashreqbank PSC (hereinafter referred to as Mashreqbank) is a United Arab Emirates (hereinafter referred to as UAE) bank with its principal place of business located in New York. Mashreqbank filed the instant action against defendant Ahmed Hamad Al Gosaibi & Brothers Company (hereinafter referred to as AHAB) seeking to recover $150 million in connection with a series of financial transactions executed in New York. AHAB is a Saudi Arabian general partnership with a principal place of business in Saudi Arabia.
Mashreqbank alleges that it wired the $150 million to an account at the Bank of America in New York as part of a currency exchange transaction with AHAB. Mashreqbank further alleges that AHAB failed to transfer the Saudi riyals contemplated by the currency exchange. Instead, the funds in the Bank of America account were transferred to an HSBC account located in New York and controlled by third-party defendant Maan Abdul Waheed Al Sanea (hereinafter referred to as Al Sanea). The HSBC account was in the name of Awal Bank BSC (hereinafter referred to as Awal). Awal is a bank established by Al Sanea in Bahrain.
Mashreqbank filed the instant action seeking damages for breach of contract for the currency exchanges that took place in New York through Mashreqbank’s bank in New York to AHAB’s bank in New York. Additionally, Mashreqbank filed an order of attachment against AHAB’s property in New York including the funds contained in the AHAB Bank of America account, which AHAB alleges was controlled by Al Sanea. At the time of the attachment, Al Sanea had already transferred all of the money in question through the HSBC account in New York to institutions outside of the United States.
AHAB filed its answer and a third-party action against Al Sanea and Awal alleging that both third-party defendants engaged in an international Ponzi scheme using AHAB’s accounts without AHAB’s knowledge and/or consent. Thus, AHAB claimed that any liability that AHAB might have to Mashreqbank was solely due to Al Sanea’s theft of the money through the currency exchange transactions that took place in New York. *5 AHAB later counterclaimed against Mashreqbank asserting that Mashreqbank aided and abetted Al Sanea in the perpetration of Al Sanea’s Ponzi scheme.
Al Sanea moved to dismiss the third-party complaint on the ground of forum non conveniens and lack of personal jurisdiction.* In support of his motion, insofar as relevant, Al Sanea averred as follows: that he is a Saudi citizen and resident; that he holds a 47% interest in defendant Awal Bank, which he also controls; that AHAB is a Saudi partnership; and that the transaction would be governed by Saudi law. He further averred that at least one of the underlying transactional documents selected a UAE forum; that all of AHAB’s witnesses, except its professional advisers, and all its documents are in Saudi Arabia; and that both translation and travel would be expensive because many, if not all, of the witnesses speak Arabic as a first language and many of the documents are in Arabic. Al Sanea also maintained that legal restrictions would prevent most of the witnesses from traveling to New York.
Al Sanea further stated that AHAB made a fraud claim to Saudi authorities and that there are pending criminal and civil proceedings in Bahrain, the UAE, the Cayman Islands, and the United Kingdom. Al Sanea also submitted the affidavit of an expert on Saudi law who opined that Saudi Arabia is capable of adjudicating this type of commercial dispute and could hear the matter through its Board of Grievances. The expert further opined that the ad hoc committee that was formed can investigate and resolve the dispute.
In opposition, Mashreqbank submitted a list indicating that most of the relevant documents are in English. The former general manager of the Money Exchange, the entity involved in the subject transaction, averred that the employees with knowledge of the transaction speak English fluently, and reside in England, *6 Bahrain, Saudi Arabia, India, Jordan and Canada. He further stated that the documents located in Saudi Arabia are available electronically.
Mashreqbank also submitted the affidavit of the Saudi lawyer who had represented Mashreqbank before the Saudi special committee. He disagreed with Al Sanea’s expert about the ad hoc committee’s role, averring that it lacks the power to adjudicate the dispute between the parties. Mashreqbank’s expert in Saudi law opined that differences between New York and Saudi law would limit access to documents and testimony. He further testified that, although the Saudi Board of Grievances can adjudicate this dispute, there could be long delays and uncertainty over whether the Board would exercise jurisdiction.
In reply, Al Sanea identified witnesses who do not reside in New York. He noted that none of the witnesses identified in Mashreqbank’s and AHAB’s discovery responses reside in New York, and only three reside in countries subject to the Hague Convention rules on taking evidence abroad in commercial matters. He further noted that the amount Mashreqbank seeks from AHAB in this action is encompassed in Mashreqbank’s action against AHAB in the UAE.
The motion court dismissed the third-party action, finding that the factors in Islamic Republic of Iran v Pahlavi (62 NY2d 474 [1984], cert denied 469 US 1108 [1985]) weighed in favor of dismissal on the ground of forum non conveniens. Having found that the relevant factors warrant dismissal of the third-party action, the court sua sponte dismissed the main action. For the reasons set forth below, this was error.
In VSL Corp. v Dunes Hotels & Casinos (70 NY2d 948 [1988]), the Court of Appeals reversed this Court’s sua sponte dismissal of an action concerning construction in Las Vegas. The dispute was between California and Nevada corporations. A New York corporation provided a financial guarantee, and resolution of the dispute required an interpretation of Nevada law. The Court stated that “[u]nder CPLR 327 (a) a court may stay or dismiss an action in whole or in part on forum non conveniens grounds only upon the motion of a party; a court does not have the authority to invoke the doctrine on its own motion.” (70 NY2d at 949.)
We have consistently adhered to the Court of Appeals admonition after VSL Corp. In Todtman, Young, Tunick, Nachamie, Hendler, Spizz & Drogin v Richardson (231 AD2d 1 [1st Dept 1997]), we reversed Supreme Court’s sua sponte forum non con *7 veniens dismissal: “A court does not have the power to invoke the doctrine of forum non conveniens on its own.” (231 AD2d at 5 [citing VSL Corp.]; see Matter of Bernz [Widschi], 139 AD2d 444 [1st Dept 1988].)
A1 Sanea’s reliance on Imperial Imports Co. v Neu & Sons (161 AD2d 411 [1st Dept 1990]), to controvert the plain holdings of VSL Corp., Todtman, Young, and Bernz, is misplaced. In Imperial Imports, third-party defendant Hanover Warehouses, a New Jersey corporation, moved to dismiss the entire New York action. This Court, relying specifically on the Court of Appeals holding in VSL Corp., again ruled that “[p]ursuant to CPLR 327 (a)[,] a court may stay or dismiss an action in whole or in part on forum non conveniens grounds upon the motion of a party.” (161 AD2d at 412.) We then granted the motion of the third-party defendant in part by severing the third-party action. Of course, in the instant case, it is uncontroverted that Al Sanea made no such motion to dismiss the entire case. Al Sanea also relies on Shiboleth v Yerushalmi (268 AD2d 300 [1st Dept 2000]), but once again, the case supports AHAB’s position. In Shiboleth, one of the two third-party defendants moved to dismiss the entire third-party complaint. This Court affirmed Supreme Court’s dismissal of just the third-party action under CPLR 327 (a). Unlike the instant case, the dismissal was not sua sponte.
The dissent’s rationale is based upon the incorrect basic premise that dismissal of the main action on a forum non conveniens ground was proper because “the third-party defendant moved to dismiss the third-party complaint on forum non conveniens grounds” and the “third-party complaint, counterclaims and defense to the complaint are admittedly intertwined” with the main action. However, no authority is cited for that proposition and, as discussed above, it runs counter to the precedent of this Department and the Court of Appeals.
Furthermore, Al Sanea distorts the record of the proceeding below. Al Sanea asserts, and the dissent accepts the assertion, that the motion court invited submissions for dismissal of the entire case. This is simply not true. While the motion court expressed reservations concerning whether the entire case “belong[ed] here,” the court only scheduled briefing for A1 Sanea’s motion to dismiss the third-party action. Mashreqbank did not participate in that initial briefing on A1 Sanea’s motion because, as Mashreqbank’s counsel stated, “[N]o one ha[d] made a forum non [conveniens] motion against my client *8 Mashreqbank.” Despite what Mashreqbank may have ultimately stated to the motion court at oral argument, when Mashreqbank finally briefed the forum non conveniens question with regard to Al Sanea’s motion, Mashreqbank argued against dismissal of the main action. The dissent’s view, that because Mashreqbank conceded that the UAE “would be an adequate forum” Mashreqbank necessarily advocated for a forum non conveniens dismissal of its own case, is similarly without support in the record. Of course, Mashreqbank, as plaintiff in the main action, could have moved the court to withdraw the action in its entirety. Mashreqbank, however, continued to argue that New York was the appropriate forum.
The dissent’s reliance on our decision in Banco do Estado de Sao Paulo v Mendes Jr. Intl. Co. (249 AD2d 137, 139 [1st Dept 1998]) is also misplaced. In Banco do Estado de Sao Paulo, we acknowledged that the motion was technically denominated as one for summary judgment. However, both plaintiff and defendants in that motion fully briefed the forum non conveniens issue as a “clearly articulated motif’ of the motion. (Id.) There simply is no indication that we raised the question sua sponte. Indeed, we explicitly recognized in Banco do Estado de Sao Paulo that our holding in Todtman, Young would have precluded such sua sponte application of forum non conveniens.
Moreover, it is clear that the motion court improvidently exercised its discretion in dismissing the third-party action on forum non conveniens grounds. In Islamic Republic of Iran v Pahlavi (62 NY2d 474 [1984], supra), the Court of Appeals set out the factors to be considered in a forum non conveniens dismissal. These factors, discussed in seriatim below, support reinstatement of the complaints.
The Pahlavi Court began with the premise that, “[t]he burden rests upon the defendant challenging the forum to demonstrate relevant private or public interest factors which militate against accepting the litigation.” (62 NY2d at 479, citing, inter alia, Piper Aircraft Co. v Reyno, 454 US 235 [1981].) Al Sanea argues, inter alia, that all of the transactions at issue occurred outside of New York. Thus, argues Al Sanea, there is no real nexus to the New York banking system, a factor militating in favor of dismissal.
This argument fails for two basic reasons. First, it is beyond cavil that New York has a compelling interest in the protection of the native banking system from misfeasance or malfeasance. The Court of Appeals holding in J. Zeevi & Sons v Grindlays *9 Bank (Uganda) (37 NY2d 220 [1975], cert denied 423 US 866 [1975]), could not be clearer in this regard. In Zeevi, the Court was faced with a dispute over a letter of credit repudiated at Citibank in New York. The plaintiff, an Israeli company, deposited funds with the defendant Ugandan bank which issued the letter of credit. At the direction of the Ugandan government and pursuant to Ugandan law, the defendant refused to honor the letter of credit and communicated that repudiation to Citibank in New York.
The Court of Appeals held that, inter alia:
“New York has an overriding and paramount interest in the outcome of this litigation. It is a financial capital of the world, serving as an international clearinghouse and market place for a plethora of international transactions, such as to be so recognized by our decisional law (Intercontinental Planning v Daystrom, Inc., [24 NY2d 372, 383-384 (1969)]). A vast amount of international letter of credit business is customarily handled by certain New York banks whose facilities and foreign connections are particularly adaptable to this field of operation (34 NY Jur, Letters of Credit, § 10, p 427). The parties, by listing United States dollars as the form of payment, impliedly accepted these facts and set up procedures to implement their trust in our policies. In order to maintain its pre-eminent financial position, it is important that the justified expectations of the parties to the contract be protected (cf. Kossick v United Fruit Co., 365 US 731, 741 [1961]). Since New York has the greatest interest and is most intimately concerned with the outcome of this litigation, its laws should be accorded paramount control over the legal issues presented (cf. Auten v Auten, 308 NY 155, 161 [1954]).” (37 NY2d at 227.)
The parallels to the instant dispute are striking. In Zeevi, both parties were foreign nationals, with one being a foreign chartered bank. The letter of credit transaction in Zeevi was one of a vast amount of letter of credit transactions in New York banks that happen every day. The foreign exchange laws of Uganda were central to the dispute.
In the instant case, the parties to the main action and third-party action are foreign nationals or a foreign chartered financial institution. The currency swaps utilizing the federal *10 reserve bank in New York and various New York corresponding banks are little different from the letter of credit transactions in Zeevi. That there was a currency swap versus the negotiation of a letter of credit drawn against funds in a foreign bank is a distinction immaterial to the Zeevi Court’s holding.
The second reason that A1 Sanea’s argument on nexus to New York fails is that Al Sanea consistently recasts the allegations in both the main complaint and the third-party complaint to suit this forum non conveniens argument. The dissent appears to suffer from the same error. AHAB framed the allegations in the third-party complaint as a scheme whereby Al Sanea committed fraud, forgery and improper use of AHAB’s credit to borrow money solely for A1 Sanea’s benefit. AHAB also alleges that Al Sanea used AHAB’s New York bank accounts to further this scheme and then stole the money from these New York accounts.
In his motion to dismiss that third-party complaint, Al Sanea consistently characterizes the dispute as one over A1 Sanea’s authority to act on behalf of AHAB; a dispute that Al Sanea contends is governed by Saudi law. Indeed, the motion court appears to have accepted A1 Sanea’s premise in ruling on the motion to dismiss. The motion court specifically pondered “whether or not Mr. Al Sanea was authorized to do what he did.”
This constituted fundamental error by the motion court. In Ehrlich-Bober & Co. v University of Houston (49 NY2d 574 [1980]), the Court of Appeals reversed this Court’s dismissal on forum non conveniens grounds of an action between a New York securities dealer and an agency of the State of Texas. The ruling in Ehrlich-Bober is instructive in several aspects. Most importantly, the Court was unequivocal in its view that the allegations in the complaint must be accepted as true:
“Preliminary to our consideration of the comity issue, we note our agreement with the conclusions reached by the Appellate Division that there was a proper basis for the exercise of long-arm jurisdiction and that the doctrine of forum non conveniens is inapplicable here. Although ‘standing by itself, a correspondent bank relationship, without any other indicia or evidence to explain its essence, may not form the basis for long-arm jurisdiction under CPLR 302 (subd [a], par 1)’ (Amigo Foods Corp. v Marine Midland Bank-New York, 39 NY2d 391, 396 [1976]), the facts alleged here, which we accept as true for *11 this purpose, show substantially more (cf. Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443 [1965]).” (49 NY2d at 579.)
Thus, the motion court plainly erred in not accepting as true AHAB’s allegations that Al Sanea used for its own purposes, and then looted, AHAB’s New York bank accounts. EhrlichBober is also instructive for its recitation of the principle enunciated above that New York has a paramount interest in protecting its own financial institutions. The Texas statute at issue provided that the defendant, as an agency of that state, enjoyed immunity from suit. The Court of Appeals was faced with both forum non conveniens and the question of whether the doctrine of comity precluded the action in New York.
The Ehrlich-Bober Court held that
“[a]rrayed against that policy which essentially serves administrative convenience, is New York’s recognized interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world (International Planning v Daystrom, Inc., 24 NY2d 372 [1969]; see, also, Bache & Co. v International Controls Corp., 339 F Supp 341 [1972]). That interest naturally embraces a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here. Indeed, access to a convenient forum which dispassionately administers a known, stable, and commercially sophisticated body of law may be considered as much an attraction to conducting business in New York as its unique financial and communications resources.
“New York’s interest in providing a convenient forum is least subject to challenge when a transaction is centered here (see Rubin v Irving Trust Co., 305 NY 288, 305 [1953]; and Auten v Auten, 308 NY 155, 160 [1954]), and particularly when it is wholly commercial in character (see Et Ve Balik Kurumu v B.N.S. Int. Sales Corp., 25 Misc 2d 299 [1960], affd 17 AD2d 927 [1962]; Tiernan v Missouri New World’s Fair Comm., 48 Misc 2d 376 [1965]; cf. Dun-hill of London v Cuba, 425 US 682 [1976]). . . .
“In the instant case the transactions in question, *12 judged by any indicator, must be considered to have been centered here. They were initiated by an employee of the defendant university in a phone call to the plaintiffs New York offices. They were accepted in New York by the plaintiff. The money was paid in New York. The securities were delivered in New York. And finally, the repurchases were to have been accomplished in New York. It must also be concluded that these were ordinary commercial transactions having no more than an indirect relation to the fulfillment of the defendant university’s governmental responsibilities.” (49 NY2d at 581-582.)
When we analyze the facts in this case as framed by AHAB’s third-party complaint, the scenario is analytically indistinguishable from that described in Ehrlich-Bober.
 The motion court erred in its analysis in other areas as well. The question of an alternative forum, one of the Pahlavi factors, was given short shrift by the motion court and is given even shorter treatment by the dissent. The court failed to identify an alternative forum that would have jurisdiction over the dispute as framed by the complaints, let alone whether the dispute would be “better adjudicated” in the alternative forum.
The motion court held only that AHAB had “several alternative locations ... to resolve the disputes.” Furthermore, AHAB could “decide whether it prefers to bring its third-party action in the UAE as well, or to seek redress in Saudi Arabia.” The facts of record simply do not support the motion court’s musing. Mashreqbank asserted that it was not subject to jurisdiction in Saudi Arabia. Al Sanea maintained that he was only subject to jurisdiction in Saudi Arabia. There are no facts of record to support any alternative forum, let alone Saudi Arabia, Bahrain, or the UAE. More importantly, though, Pahlavi does not suggest that merely because a party may be subject to suit in a country establishes that it would be an alternative forum.
The Pahlavi analysis is far more nuanced. Pahlavi cited with approval the factors set forth in Gulf Oil Corp. v Gilbert (330 US 501, 508 [1947]), which were reaffirmed in Piper Aircraft Co. v Reyno (454 US 235, 241 n 6 [1981]). These factors include: “the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses.” (330 US at 508.) The motion court simply made no factual findings whatsoever on any of these factors.
*13 There is no finding that witnesses subject to a travel bar in Saudi Arabia would be precluded from testifying via some alternate means. Similarly, and perhaps more importantly, there is no finding that the witnesses could even testify in Saudi Arabia, Bahrain or the UAE. AHAB proffered that two of the witnesses with the most knowledge of the Al Sanea scheme reside in England and Los Angeles. Ad Sanea identified no witnesses in his moving brief. It was only in reply that he listed a series of witnesses but failed to link their proposed testimony to the allegations of the third-party complaint.
The record is similarly inadequate on the issues of access to documents. Only AHAB specified which documents were necessary and none support dismissal on forum non conveniens grounds.
Finally, crediting the allegations in the third-party complaint as true, as we must, it is patent that New York law will apply. The law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating conduct within its borders. (Banco Nacional Ultramarino v Chan, 169 Misc 2d 182 [Sup Ct, NY County 1996], affd 240 AD2d 253 [1st Dept 1997].)
In light of our reinstatement of the complaints, we need not address the issue of whether further forum discovery should have been permitted.
Accordingly, the judgment of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered August 11, 2010, dismissing the action and the third-party action, should be reversed, on the law, with costs, the judgment vacated and the complaints reinstated. The appeal from the order of the same court and Justice, entered July 29, 2010, which granted third-party defendant’s motion to dismiss, should be dismissed, without costs, as subsumed in the appeal from the judgment.

 The portion of the order denying AI Sanea’s motion to dismiss for lack of personal jurisdiction is not on appeal. However, were we to consider the issue, we would agree with the motion court that there is personal jurisdiction based on Al Sanea’s transaction of business in New York (see e.g. Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 [2006], cert denied 549 US 1095 [2006] [the court may exercise long-arm jurisdiction over persons who, from out of state, use electronic and telephonic means to project themselves into New York to conduct business transactions]), and/or his commission of a tort in New York (see e.g. Banco Nacional Ultramarino v Chan, 169 Misc 2d 182, 188 [Sup Ct, NY County 1996], affd 240 AD2d 253 [1st Dept 1997] [where jurisdiction is based on committing a tort in New York, under CPLR 302 (a) (2), the defendant need not be physically present in order to be subject to personal jurisdiction]).